Argued January 7; Affirmed February 3; Rehearing Denied
March 2, 1948

# KELLEY *v.* OREGON SHIPBUILDING
## CORPORATION

189 P. (2d) 105

[1]

*Arthur E. Prag,* of Portland, argued the cause for appellant. On the brief were Hoy and Prag, of Portland.

*Randall B. Kester,* of Portland, argued the cause for respondent, Oregon Shipbuilding Corp. With him on the brief were Maguire, Shields & Morrison, of Portland.

Before ROSSMAN, Chief Justice, and BELT, KELLY, BAILEY and HAY, Justices.

BELT, J.

This is an action by an employee of the defendant company to recover damages resulting from an assault and battery by a fellow employee, Paul Archer. Archer was not served and made no appearance.

The plaintiff, in so far as material herein, alleges:

"That at all times mentioned herein the plaintiff was an employe of the defendant Oregon Shipbuilding Corp. and was employed as a burner leadman. That shortly before the 24th day of March, 1944, the defendant Oregon Shipbuilding Corp. also had in its employ the defendant Paul Archer as a burner, which said defendant was a member of the crew over which this plaintiff had supervision.

"That the defendant Paul Archer had made threats against the life of this plaintiff and had frequently threatened to beat him up. That the defendant Paul Archer made these threats to the defendant Oregon Shipbuilding Corp., and that the defendant Oregon Shipbuilding Corp. at all times mentioned herein knew that the defendant Paul Archer was threatening to, and intended to, assault and to beat this plaintiff. That the defendant Oregon Shipbuilding Corp. discharged the defendant Paul Archer but immediately rehired him in another part of the yard.

### III.

"That on or about the 24th day of March, 1944, the defendant Paul Archer while in the employ of defendant Oregon Shipbuilding Corp., and while this plaintiff was engaged in his duties as an employee of said defendant Oregon Shipbuilding Corp., in said defendant's yard, deliberately and intentionally assaulted, struck, beat and kicked this plaintiff and fractured several bones in plaintiff's face and fractured two of plaintiff's ribs and broke his dental plate and caused this plaintiff great pain and suffering, all to his damage in the sum of $10,000.00.

### IV.

"That defendant * * * was careless * * * and negligent in the following particulars, to-wit:

"1. In rehiring or transferring defendant Paul Archer after having had actual knowledge of his

threats and intention to do bodily harm to this plaintiff.

"2. In permitting the defendant Paul Archer to loiter around the part of the yard in which this plaintiff was required to work, having full knowledge of the defendant Paul Archer's intention to assault and beat this plaintiff.

"3. In failing to use any care or any means whatsoever to prevent the defendant Paul Archer from carrying out his threats of bodily harm against this plaintiff, knowing full well that defendant Archer intended to assault and beat this plaintiff."

The court overruled a general demurrer to the above complaint, and the defendant thereupon answered, denying generally the charges of negligence and alleging as affirmative defenses estoppel and the applicability of the Workmen's Compensation Act. A demurrer was sustained to the affirmative defenses.

The cause was submitted to a jury and a verdict returned against the defendant for $5750.00, general damages, and $343.76, special damages. Motions for nonsuit and directed verdict were denied. After verdict, the defendant moved for judgment in its favor notwithstanding the verdict of the jury, and, in alternative, moved for a new trial. The court set aside the judgment and entered one in favor of the defendant. Plaintiff appeals seeking to have the judgment in his favor reinstated.

Defendant contends that: (1) The complaint fails to state facts sufficient to constitute a cause of action. (2) There is no substantial evidence tending to show negligence of the defendant. (3) The injury resulting to plaintiff is compensable under the Workmen's Compensation Act, as it involves an "accident arising out of the course of his employment." (4) The State

Industrial Accident Commission awarded compensation to the plaintiff for such injuries and it was accepted by him; therefore, he should be precluded from maintaining this action.

■ Plaintiff asserts that this action is governed by the Employers' Liability Act, §§ 102-1601 to 102-1606, O. C. L. A., and invokes particularly the "and generally" clause, requiring the employer to "use every device, care and precaution which it is practicable to use for the protection and safety of life and limb * * *." We think the Act has no application. The clause referred to must be one of the general kind mentioned specifically in the preceding parts of the Act. *Ferretti v. Southern Pacific Company,* 154 Or. 97, 57 P. (2d) 1280; *Freeman v. Wentworth & Irwin, Inc.,* 139 Or. 1, 7 P. (2d) 796; *Bottig v. Polsky,* 101 Or. 530, 201 P. 188. When this clause is read in the light of the context of the Act, it is clear that the legislature never contemplated that it would be applicable to an action of this kind. Whether the defendant company was negligent must be determined under the rules of the common law.

Attention will be first directed to the contention of the defendant that the evidence, relative to the charge of negligence, is insufficient to justify submission of the cause to the jury. If the evidence is insufficient to support a judgment against defendant, there is no necessity of discussing the other interesting questions involved in this appeal.

■ It is well settled that an employer is liable in damages if an employee is injured as a result of an assault and battery by a fellow employee known by the employer to have such vicious and dangerous propensities as to constitute a hazard to fellow workers. *Mis-*

*souri, K. & T. Ry. of Texas v. Day,* 104 Tex. 237, 136 S. W. 435, 34 L. R. A. (N. S.) 111; *Lamb v. Littman,* 128 N. C. 361, 38 S. E. 911, 53 L. R. A. 852; *Country Club of Jackson v. Turner,* 192 Miss. 510, 4 So. (2d) 718; 35 Am. Jur. 628, § 199; 39 C. J. 548, § 652 (bb.); 1 Restatement, Agency, § 213.

In *Country Club of Jackson v. Turner,* supra, the judgment in favor of the plaintiff was reversed because of the insufficiency of evidence, but the principles of law therein announced are applicable herein. The Court said:

> "Compliance with the duty to use reasonable care to maintain working conditions that are reasonably safe involves the duty to use such care in avoiding the employment or retention of a servant who is known to be dangerous or vicious where such propensities are calculated to expose co-employees to greater dangers than the work necessarily entails."

In *Lamb v. Littman,* supra, the Court stated:

> "We do not wish to be understood as holding that the master is generally an insurer of the good conduct of his representative, or an insurer against his violence resulting from his own malice or ill-will, or sudden outbursts of temper, although in charge of the master's business; but only when he puts in such representative as is by him known, or ought to have been known, to be violent and mean, and the injury is the natural result of such character."

This Court in *Peck v. Gerber,* 154 Or. 126, 59 P. (2d) 675, 106 A. L. R. 996, recognized the same legal principle, although that case did not involve the liability of an employer for an assault and battery by one employee on another. The Peck case—much relied upon by the plaintiff as it is the only one cited by him—

was against the owner of a restaurant for damages sustained by a patron as a result of a brawl between two other patrons. Plaintiff was injured when one of the fighters was knocked against her. Judgment against Gerber was upheld because it was thought there was substantial evidence tending to show that one of the patrons engaged in the fight was known by the defendant Gerber to be "vicious, violent, and disorderly." We think the factual situation in *Peck v. Gerber,* supra, is materially different from the case at bar.

We agree with appellant that if an employer knew, or ought to have known, that one of his employees had such vicious and dangerous propensities that he would probably injure some co-worker, such employer would be liable by retaining such worker. We do not mean to hold that it is the duty of an employer to investigate at his peril the cause of every personal grievance of employees. An employer is only required to act in keeping with the standard of care that would have been exercised by ordinary cautious and prudent employers under similar circumstances.

The defendant Oregon Shipbuilding Corporation had over 30,000 employees, and was engaged in the important business of building ships to be used in the prosecution of the war. We apprehend that if it had given heed to all of the rough talk and threats indulged in by many of the employees, the work of building ships would have been greatly impaired.

The attack by Archer—a man 47 years of age and weighing about 230 pounds—on the plaintiff, who was 67 years old and weighed only 137 pounds, was most vicious and brutal. Archer was not acting within the scope of his master's business when he made this attack on the plaintiff. There is no question of agency involved. Plaintiff does not invoke the doctrine of

respondeat superior. This action is based on negligence or a breach of duty on the part of the defendant company.

■ The precise questions are: Did the defendant fail in its duty to exercise reasonable care to protect the plaintiff against Archer? Did defendant have reasonable grounds to believe when it retained Archer in its employ that he would do bodily harm to the plaintiff?

When Archer was discharged, the plaintiff said that Archer, in the presence of the foreman, Leonard Thielke, thus threatened him: "You old son of a bitch, I'll stomp the hell out of you." Thielke denied hearing any threat. We will assume, however, that such threat was made and that the knowledge thereof was imputed to the employer. At the time of the attack, plaintiff was engaged in work on the premises of the defendant. About two months prior to the attack, the plaintiff had caused Thielke to discharge Archer because the latter would not obey orders. Archer was known about the plant as "onery" and quarrelsome. Archer was a rough talker and inclined to be a "bully." However, the attack in question is the only one in which he was involved with any employee. There is no evidence of any other threat made by Archer, the knowledge of which could be imputed to the defendant employer. There is no evidence of Archer having a reputation for being vicious or dangerous. It will be recalled that the attack occurred two months after the threat was made. No trouble arose during the interval.

When the "discharge slip" was filed in the "Clearance Office," arrangement was made to transfer Archer to the "Way Department," which was in a different part of the yard from where Archer had previously worked. Plaintiff and Archer did not work well together, and the defendant no doubt deemed it

advisable to separate them in order to get better service.

After careful consideration of the entire transcript of the evidence, we are convinced that there is not substantial evidence to support a judgment against the defendant company.

The judgment of the circuit court in favor of the defendant is affirmed.