Argued June 2, affirmed June 30, 1954

McHENRY *v.* HOWELLS ET UX.

272 P. 2d 210

*Orval Thompson,* of Albany, argued the cause for appellant. On the brief were Mark V. Weatherford and Sam Kyle, of Albany.

*George H. Fraser,* of Portland, argued the cause for respondents. With him on the brief were Warren A. McMinimee, of Tillamook, and Cleveland C. Cory and Patricia A. Young, of Portland.

Before Latourette, Chief Justice, and Lusk, Brand and Tooze, Justices.

TOOZE, J.

This is an action to recover damages for personal injuries suffered as the result of alleged negligence, brought by plaintiff Georgia McHenry against Horace W. Howells and Jane Howells, his wife, as defendants. The trial court sustained defendants' motion for an involuntary nonsuit and dismissed the action. Plaintiff appeals.

Plaintiff resides at Corvallis, Oregon. She is the mother of the defendant Jane Howells. On Monday, February 4, 1951, plaintiff went to Toledo in an automobile driven by her husband. Defendant Jane Howells picked up her mother at Toledo and took her to the Howells home in Newport for a social visit of several days.

Defendants built their Newport home in 1946, but in 1949 or 1950, they remodeled it. At that time a stairway from the first to the second floor was constructed. The steps of the stairway were built of knotty pine wood and were of natural color. They were as wide as ordinary steps and had a rise of approximately seven inches. The siding of the stair-

way was covered with light-colored wall board. The wall-to-wall carpet in the hall at the bottom of the stairway was dark red. The door at the bottom of the stairway was opposite a window covered with heavy drapes, and this door opened outward toward a bedroom. The bottom of the door was constructed flush with the top of the first step.

Lighting was available to the stairway from three sources: (1) outdoor light from a window directly opposite the stairway door; (2) electric lamps in a den which opened into the hall; and (3) an electric light in the attic at the top of the stairway.

This stairway was the scene of plaintiff's mishap on Thursday morning, February 8, 1951. On previous visits to her daughter's home, she had been up and down the stairs a half dozen times, more or less, without any difficulty, but on this particular visit she had not had occasion to use the stairway prior to the accident.

Just prior to the accident, plaintiff had decided to assist her daughter by doing some ironing while her daughter was absent from the house. She had ascended the stairs to see if the clothes hanging in the attic were sufficiently dry to be ironed. Some of her own wearing apparel was included. Taking a few of the articles on her arm, intending to return later with a clothes basket to get the remainder, plaintiff started down the stairs. The stairway door was open. While descending the stairs she had reached the second step from the bottom and from appearances being impressed that it was the bottom step, she stepped forward thinking she was stepping out on the floor, when in fact she was two steps up. As a result, she suffered a bad fall, causing the personal injuries of which she complains.

■ Upon the express invitation of defendants, plaintiff was a social guest in their home, enjoying their hospitality. No element of business was connected with her visit in the home, and hence, she was in no sense a "business invitee", as that term is defined in the law of negligence. Her status was that of a licensee, and the duty owed to her by defendants was the duty owed by an owner, possessor, or occupant of land to a licensee. The authorities are quite uniform in so holding. Some difficulty has been experienced by the courts in classifying the status of a social guest. In an exhaustive note in 25 ALR2d 598, 600, the author says:

"The terminology of status (that is, the classification into invitees, licensees, and trespassers) used in classifying the liability of an owner, possessor, or occupant of land to one injured while on the land due to defects therein has caused some difficulty in discussing the issue of liability to a social guest in a home who is injured by the defective condition of the property, since, while such a guest is clearly on the property as the result of an 'invitation' in the layman's sense of that word, the authorities have universally agreed that he should not be entitled to the same degree of care for his safety as one who is on the property of another as what is sometimes called a 'business invitee', that is, for the purpose of conferring some benefit other than purely social.

"Despite the express or implied invitation upon which the social guest relies in coming to his host's premises, the courts have concurred in classifying him as a 'licensee' of some sort * * *."

In 38 Am Jur 778, Negligence, § 117, it is stated:

"Although there is not a great deal of authority upon the point, the rule appears to be that the relation between host and guest is not that of invitor and invitee, but that of licensor and licensee,

and that, in accord with the general principle which determines liability of an owner or occupant of premises to one who comes thereon as a mere licensee, the host is not liable for an injury sustained by the guest from some defect in the condition of the premises, except as the licensee is needlessly exposed to a peril through the failure of the owner or occupant to warn him of danger, or by the active negligence of the owner or occupant. There is no duty on the part of the host to reconstruct or improve the premises for the purpose of making his house more convenient or more safe for those accepting his hospitality, gratuitously extended. \* \* \* A better reason for the rule is that a host merely offers his premises for enjoyment by his guests with the same security that the host and the members of his family who reside with him have. However, the rule is that a host who knows of a concealed danger upon the premises is guilty of negligence if he permits the guest, unwarned of the peril, to come in contact therewith, and he may be held liable to the guest for an injury thus sustained.''

■■ In 65 CJS 495, Negligence, § 35d, it is said:

''A mere licensee takes the property or premises on which he enters as he finds them, enjoys the license subject to its concomitant perils, and, although he does not necessarily assume all risk of injury by going on another's premises, he does assume all the ordinary risks or dangers incident to the condition of the premises or property, \* \* \*. A social guest on the host's premises or in his home must take the premises as he finds them, with no greater right than a mere licensee with respect to the host's liability for injuries to the guest.''

■ The defendants owed plaintiff the duty to use reasonable care not to injure her through any affirmative or active negligence on their part, as distinguished from passive negligence. They also owed her the

duty of not willfully, wantonly, or intentionally inflicting injury upon her. As to plaintiff, defendants were subject to the rule of law that liability of an owner or occupant of premises to a licensee may be predicated upon negligence in leaving something in the nature of a trap or pitfall at a place where his presence might have been anticipated, without a warning thereof. "A 'trap', within the meaning of this rule, is a danger which a person who does not know the premises could not avoid by reasonable care and skill." 65 CJS 503, Negligence, § 38.

■ In 65 CJS 503, Negligence, § 38, it is further said:

"In accordance with the general rule discussed supra Sec. 35 a, an owner or person in charge of premises ordinarily is not under any affirmative duty to give licensees warning of concealed perils, although he might, by the exercise of reasonable care, have discovered the defect or danger which caused the injury. However, he owes a duty *not knowingly or willfully* to let the licensee run into, or expose him to, a hidden danger or peril, but should take whatever steps are reasonable, under the circumstances, to protect the licensee from such peril, and accordingly should give to the licensee a reasonable warning, or information regarding the dangerous condition, *which is not open to the licensee's observation but of which the owner or occupant knows or should know.* In case of failure of this duty, the owner or proprietor may be held liable for unusual concealed perils against which the licensee cannot protect himself, and this liability is predicated, not on the existence of the concealed danger, but on the failure to give warning of its existence." (Italics ours.)

As to the duty owed by an owner or occupant of premises to a licensee, the holdings of this court have

been in accord with the rules above stated. In *Lange v. St. Johns Lumber Co.,* 115 Or 337, 348, 237 P 696, we said:

> "The case may safely be placed upon the ground that by her own testimony the plaintiff was present on the defendant's lumber dock in no better situation than that of a licensee; that the evidence does not show in the least any wanton or willful injury inflicted by the defendant and that at her peril plaintiff took the premises as she found them."

See also *Akerson v. D. C. Bates & Sons, Inc.,* 180 Or 224, 227, 174 P2d 953; *Napier v. First Cong. Church,* 157 Or 110, 113, 70 P2d 43; *Massey v. Seller,* 45 Or 267, 275, 77 P 397, 16 Am Neg Rep 553.

■ Plaintiff's status as a licensee was in no way changed by the fact that at the time of the accident she was engaged in performing a service for her daughter. One who enters a home as a social guest will not escape the liabilities of that status merely by performing incidental services beneficial to the host in the course of the visit. *Gudwin v. Gudwin,* 14 Conn Supp 147; *O'Brien v. Shea,* 326 Mass 681, 96 NE2d 163.

The law applicable to the facts in the instant case is fully discussed in the ALR note appended to the the case of *Laube v. Stevenson,* 137 Conn. 469, 78 A2d 693, 25 ALR 592, 598. The clear weight of authority supports our position. Also see Note, 92 ALR 1002, 1005; Note, 12 ALR 987.

■ In the instant case no claim is made, nor is there any evidence whatever to show, that defendants were guilty of any willful or wanton misconduct toward plaintiff, nor that defendants committed any act of affirmative or active negligence. The evidence is directed solely to an alleged structural defect in the

stairway and to the failure of defendants to warn plaintiff thereof. It is manifest that the alleged defect did not constitute a trap or hidden peril within the meaning of the law. The condition of the stairway was open and obvious; it could readily be observed by a person exercising ordinary care for his own safety. Defendants were under no obligation to reconstruct the stairway for the protection of plaintiff. Plaintiff took the premises as she found them. Defendants violated no duty that they owed to plaintiff.

The judgment is affirmed.